GROVER BUSH, Respondent, v. KANSAS CITY PUBLIC SERVICE COMPANY, a Corporation, Appellant.—No. 38149.—169 S. W. (2d) 331.

Division Two, January 4, 1943.

*Charles L. Carr* and *Watson, Ess, Groner, Barnett & Whittaker* for appellant.

*E. E. Thompson, Alfred H. Osborne, Ben Mossel* and *Thompson & Osborne* for respondent.

880

WESTHUES, C.—This suit was filed by respondent Bush against the Kansas City Public Service Company to recover damages for personal injuries alleged to have been sustained in a collision of a car driven by Bush and a bus operated by the defendant, Kansas City Public Service Company. A trial resulted in a judgment in favor of Bush in the sum of $8,100.00, and the service company appealed.

The collision occurred at about 7:15 a. m., May 17, 1939, on Thirty-seventh street near Bennington avenue. The service company maintained a private driveway in the shape of a "U" on the south side of Thirty-seventh street, where busses coming to the end of their run east waited a few minutes before going west. Bush at the time was driving his private car east on Thirty-seventh street intending to go to his work. He testified that as he approached the "U" private driveway he noticed the bus in question standing at the south edge of the sidewalk on the south side of the street; that when he was a short distance from the driveway the bus was driven out into the street and into his pathway, whereupon he swerved his car to the north but collided with the front end of the bus; that his car was pushed northward a number of feet. Since appellant on this appeal has not questioned the sufficiency of the evidence to justify a verdict in plaintiff's favor we need not further detail the circumstances of the collision except where necessary to decide questions of law.

The first point briefed by appellant pertains to the cross-examination of plaintiff. This arose in the following manner. The case had been tried before and had resulted in a verdict in plaintiff's favor in the sum of $12,500.00. The trial court granted a new trial on the theory that the verdict was grossly excessive. Prior to the first trial the defendant had taken the deposition of Bush. In this deposition he was asked how many times he had been married and answered that he had been married twice. At the first trial Bush was asked the same question and answered that he had been married four times. At the last trial, which we are now reviewing, appellant's counsel, out of hearing of the jury, informed the trial judge that he desired to ask Bush about the number of times he had been married. After some discussion the trial court stated:

"If there is an objection this time—if you ask him the same question and if there is an objection the objection will be sustained."

Respondent insists that since appellant did not actually ask him any questions concerning this matter during the trial the point is not here for review. Without deciding that question we will assume that the trial court made a definite ruling and that such ruling is before us for review. Numerous pages of appellant's brief were

devoted to this question and a score or more cases were cited and discussed. However, appellant's contention may be ascertained by quoting the following from its brief:

"The trial court, by so ruling, denied the defendant (a) its full right of cross-examination of the plaintiff and (b) its right to test the truthfulness and veracity of the plaintiff and to impeach the plaintiff, both of which rights are clearly recognized and upheld by the statutes and numerous authorities in Missouri."

We are of the opinion and the record discloses that appellant was granted his full right of cross-examination on the merits of the case. Bush was cross-examined at length with reference to the collision, also in detail as to his injuries. On this latter subject the examination extended back over a period of more than twenty years. Hospital records and much medical evidence were introduced in an attempt to convince the jury that the injuries of which plaintiff complained were not sustained in the collision with the bus. However, the right of cross-examination to a limited degree extends to collateral matters. A witness may be asked questions the answers to which may tend to degrade the witness and affect his credibility. The extent of such an examination rests largely within the discretion of the trial court. 70 C. J. 894, sec. 1098. Again, a witness' credibility may be impeached by showing that he made statements inconsistent with his evidence, or that he testified to one state of facts in one case and to contrary facts on some other occasion. Was the proffered examination proper under either theory? We think not. The number of times plaintiff may have been married was certainly foreign to any issue before the court and jury. The answer to the question of how many times plaintiff had been married did not affect his credibility as a witness. In fact such evidence was incompetent for any purpose. State ex rel. Dick & Bros. Quincy Brewery Co. v. Ellison et al., 287 Mo. 139, 229 S. W. 1059, l. c. 1063; Khan v. Zemansky, 210 Pac. (Cal.), 529. A witness may not be impeached on an immaterial matter. Atlantic Coast Line R. Co. v. Register, 139 S. E. (Ga.) 735. In the Khan and Atlantic cases the plaintiffs were questioned on cross-examination with reference to their marriage status. The defendant attempted to show that the answers were false. The court in the Khan case stated:

"On cross-examination both testified that they were married in Helena, Mont. (meaning plaintiff and her husband). The court sustained objections to questions as to the time of the marriage and refused to permit the defendants to impeach Mrs. Khan by showing that, in a trial between ▮▮▮ other parties, she had testified that she and the plaintiff were married in California. The time or place of marriage was wholly immaterial to any issue in the case. It is settled that a witness cannot be impeached on immaterial matters."

So in this case, since the question of how often plaintiff had been

married was immaterial, appellant had no right to show the inconsistency in plaintiff's testimony on this question as given in the deposition and at the first trial. The rule is stated as follows in 70 C. J. 787, sec. 971:

"The falsehood which will authorize the disregarding of a witness' testimony must be as to a material matter, or at least as to a matter which the witness believes to be material, and a witness is not to be discredited because of a discrepancy, or contradiction, or even deliberate falsehood as to an irrelevant or immaterial matter."

See also 70 C. J. 1046, sec. 1238; Janis v. Jenkins, 58 S. W. (2d) 298, l. c. 301(3); Schroeder v. Rawlings, 344 Mo. 630, 127 S. W. (2d) 678, l. c. 682 (6, 7); Jones on Evidence (3 Ed.), sec. 827. All of the cases cited by appellant need not be mentioned. In fact the correctness of the rules of law, as announced and contended for by appellant, cannot be denied. The rules are: Reasonable latitude in the cross-examination of the adverse party; the right to ask questions, answers to which would tend to degrade the witness and affect his credibility (Alford v. United States, 282 U. S. 687; State v. Day, 339 Mo. 74, 95 S. W. (2d) 1183; State v. Crow, 337 Mo. 397, 84 S. W. (2d) 926); the right to show inconsistent statements made by the adverse party, sworn and unsworn, as to material facts at issue.

The difficulty with appellant's position, as we have demonstrated, is that the question appellant desired to ask was not pertinent to any issue in the trial and if answered by plaintiff would not have tended to discredit him as a witness. Also, since the evidence was inadmissible in the first place plaintiff could not have been impeached by the showing of inconsistent statements as to such immaterial fact.

The second point briefed concerns instruction number one given at plaintiff's request. It is urged that the instruction submitted specific negligence other than and beyond the scope of the negligence pleaded and without supporting evidence. For fear we may mis-state appellant's contention we quote from its brief:

". . . plaintiff's said petition specifically pleads that defendant's bus operator negligently failed to keep a vigilant and proper lookout for traffic upon Thirty-seventh Street 'while operating said motor bus *upon and into* said Thirty-seventh Street,' while said plaintiff's Instruction No. 1 (not limited to the specific negligence pleaded) erroneously submits specific negligence on the part of the bus operator in failing to keep a vigilant lookout for traffic on Thirty-seventh Street '*immediately prior to and at the time of operating said bus onto* said street.' "

We understand appellant's position to be that the petition charged negligence in the operation of the bus while it was being driven upon and into Thirty-seventh street, and that the instruction submitted negligence in the operation of the bus prior to the time it was driven upon the street. Defendant's evidence was that the bus was

standing at the sidewalk line immediately prior to being driven upon Thirty-seventh street. Therefore, if the bus were moved forward its front end would immediately be upon the street. When the bus driver, therefore, intended to drive the bus into the street it was his duty to exercise the highest degree of care, before moving the bus, to observe any traffic upon the street. The instruction, as we view the situation, was correct when it imposed that duty upon the defendant. We are also of the opinion that the wording of the petition substantially harmonized with the instruction. Note the petition charged that the operator of the bus negligently failed to keep a vigilant and proper lookout for traffic upon Thirty-seventh street ''while operating said motor bus upon and into said Thirty-seventh Street.'' Appellant cited many cases to support its contention that instructions must be within the pleadings and the evidence. Let that be conceded. We rule that instruction number one was within both the pleadings and the evidence. The bus driver testified that he looked and saw only one car approaching. The evidence was that there were more. Two drivers of cars testified that they were driving within plain view and in close proximity of the point of collision. The jury was therefore authorized to find that the operator of the bus overlooked a number of cars, if in fact he did look.

Again, appellant contends that the instruction casts upon the driver the duty to exercise the highest degree of care while operating a bus upon a private roadway and while it was standing still; that the law in such cases requires only ordinary care. The point is practically the same as the one just considered. As above stated, the bus driver testified that his bus was standing with the front end at the street line; that he was waiting for his time to begin a run; that before he moved the bus he looked both east and west for cars on Thirty-seventh street. It certainly would be a strained construction of the statute, sec. 8383, R. S. Mo. 1939, to say that under such circumstances the operator of appellant's bus was required to exercise only ordinary care. Since the bus was at the street line and the operator intended to drive it upon a public street we rule that he was bound to exercise the highest degree of care to discover traffic upon the street and that such care is required by the statute, supra. Such cases as McLarney v. Cary, 98 S. W. (2d) 144, and Alexander v. Barnes Grocery Co., 223 Mo. App. 1, 7 S. W. (2d) 370, cited by appellant, are not in point. In the Alexander case the event which gave rise to an injury occurred wholly upon private property, and in the McLarney case the negligence charged was the parking of a truck without lights in a parking zone.

The third and last point briefed by appellant is, that the trial court erred in not granting plaintiff a new trial for the reason that the verdict of the jury was so grossly excessive as to shock the

conscience and that it showed bias and prejudice on part of the jury. One new trial was granted for this reason, where the verdict was for $12,500.00. There was a sharp dispute in the medical testimony as to whether plaintiff sustained the injuries complained of in the collision with the bus or whether he had them prior to the collision. If plaintiff and his doctors are to be believed, then plaintiff sustained a permanent injury to his back. Two doctors who treated and examined plaintiff testified that his injuries were permanent; that his disability was about seventy-five per cent. Dr. Zuber stated that at the time of the trial plaintiff could not do carpenter work or hard labor. Plaintiff had been a carpenter and had worked at his trade for more than fifteen years. Immediately prior to the collision in question he had been following his trade and had worked every day. After the collision and up to the time of the trial he had not been able to do any hard labor. The accident occurred in May, 1939. The last trial was held in November, 1941. A number of witnesses with whom plaintiff had worked testified that prior to the collision plaintiff had always been very active and able to perform hard labor. The jury had the right to take that into consideration in deciding whether plaintiff's or defendant's doctors were right on the question of whether plaintiff had been suffering with a back injury prior to the collision. In passing upon the question of whether a verdict is excessive an appellate court must take the evidence of plaintiff as true. Clark v. Atchison & Eastern Bridge Co., 333 Mo. 721, 62 S. W. (2d) 1079, l. c. 1083 (14); Zichler v. St. Louis Public Service Co., 332 Mo. 902, 59 S. W. (2d) 654, l. c. 659 (18); Westenhaver v. St. Louis-San Francisco R. Co., 340 Mo. 511, 102 S. W. (2d) 661, l. c. 665(6,7). Plaintiff, at the time of the collision, was forty-nine years of age and performing carpenter work daily without any difficulty. As to his condition at the time of the trial the doctor testified as follows:

"A. I estimate his disability at about 75 per cent.

"Q. (By Mr. Thompson) Doctor, state whether or not in your opinion that disability is reasonably certain to remain permanent? A. Well, the disability has been present for better than two years now, and there doesn't seem to be any improvement in his condition at this time and I believe that it is permanent.

"Q. Your medical opinion is that that condition is permanent? A. Yes, sir.

"Q. That includes the 75 per cent disability from being able to follow any kind of labor work? A. Yes, sir, that is true."

We deem the above evidence sufficient to sustain the verdict for $8,100.00. This court has affirmed judgments of about that same amount in similar cases. Zichler v. St. Louis Public Service Co., supra; Morris v. Atlas Portland Cement Co., 323 Mo. 307, 19 S. W.

886

(2d) 865, l. c. 878 (14); Webb v. Missouri-Kansas-Texas R. Co., 342 Mo. 394, 116 S. W. (2d) 27, l. c. 30 (7, 8).

The judgment is affirmed. *Bohling* and *Barrett, CC.*, concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.