**BRESSIE v. BRESSIE.**

No. 28729.

St. Louis Court of Appeals.

Missouri.

March 16, 1954.

As Modified on Denial of Rehearing April 16, 1954.

Ernest J. Hilgert, Webster Groves, Walter J. Kramer, St. Louis, for appellant.

Carl A. Enger, St. Louis, for respondent.

WOLFE, Commissioner.

This is an action for divorce brought by the husband of the defendant. The defendant sought a divorce by cross bill. The trial court denied relief under the cross bill and granted a divorce to the plaintiff. The defendant prosecutes this appeal.

Plaintiff's petition charges that the defendant deserted him in 1948 and had absented herself for a period of three years immediately preceding the commencement of this action.

The defendant in her cross bill charges that she was forced to leave her home and that the plaintiff struck her. She charges him with excessive drinking, sullenness, association with other women, and failure to provide for one of their minor sons.

The parties were married in 1928 and there were three sons born to them. The eldest was 23 years of age at the time the case was tried, one was 21 years old, and the youngest was 19. Bressie ran an automobile repair business of his own from which he earned an income quite adequate to supply all the needs of his family. He had purchased, in his wife's name, a home which was appraised at about $16,000, and was free of encumbrances. In addition to the funds necessary for household expenses, he gave his wife money from time to time and she kept this in a safe deposit box in a

bank, together with some bonds he had purchased. Bressie, as her deputy, had access to the box, but it appears that his wife took charge of all their savings. She had an automobile of her own which he had given her. During the time that they lived together he was always a generous provider. A short time before the parties were separated Mrs. Bressie told her husband that they were not really married. She said that she reached this conclusion because, at the time of their marriage in church, she had mentally denied that she took Bressie as her husband while she was audibly proclaiming that she did. Both of the parties were of the same religious persuasion and Mrs. Bressie's idea that she was not really married was discussed by both parties with members of their church clergy.

Up to this point there is no conflict in the evidence adduced, but there is a considerable variance between the testimony of Bressie and Mrs. Bressie as to the cause of the separation.

Mrs. Bressie testified that Bressie was addicted to drinking and was sullen most of the time. She said that he boasted of his association with other women and that on one occasion she saw him sitting with a woman in an automobile in Tower Grove Park. As to the day of their separation she stated that late in the night of June 11, 1948, she was in bed when Bressie came home intoxicated. He went to her bed and when she sought to avoid him he struck her and threw some books at her. She told him that she was going to leave and he then went to the place where she kept her keys. While he was trying to find the keys to the safe deposit box all the keys were strewn upon the floor. Mrs. Bressie had by this time put on sufficient clothing and she left the house, got in her automobile, and drove away. She did not return until four years later except for occasional visits with her sons when Bressie was at work. During this period of absence she took up the study of nursing and was a practicing graduate nurse at the time of the trial. On July 4, 1952, while Bressie was at work, Mrs. Bressie moved back to the house. She immediately changed all the locks on the

doors and put all of Bressie's clothing in the garage. When he returned home, he was obliged to break the locks to gain entrance and the occurrence resulted in the police being called and a charge of peace disturbance was placed against Mrs. Bressie. She was shown a copy of a letter addressed to her by the archbishop denying her request for a church separation and directing her to return to her husband. She said that she had received a letter from the archbishop but she would neither affirm nor deny that the copy shown her was the same as that she had received.

Bressie testified that the trouble began between them when his wife got the idea that they were not really married because of mental reservations she had when the ceremony was performed about twenty years before. He said that on the particular day of separation he had drunk some beer but was not intoxicated. He was home in bed when his wife, who had been out for the evening, returned and told him that she wanted to be single and that in the eyes of the church they were not really married. In aggravation he struck her on the thigh and threw some books that she was continually reading toward the waste basket. She said that she was leaving whereupon he tried to get the keys to the safe deposit box but picked up the wrong ones. Mrs. Bressie then left stating that she would never return. After she was gone he continued to live with their sons in the same house and made repeated efforts to persuade her to return. He thought that she might be benefited by a trip to Rome, and in 1950 he paid the expenses of this trip for his wife and sons. All of this was to no avail and in 1951 he brought the present action for divorce. Bressie said it was entirely possible that his wife had seen him in an automobile with another woman as he was frequently required by reason of his work to ride in customers' cars with them. He also said that he had met the sister of a friend of his about six months prior to the trial and that he had visited her and gone on a trip with her and her brother. He made her a present of flowers and candy at Easter time. He had also visited in the

home of another lady. He stated that he had gone to his church court of marital relations because he wanted his wife to come back. There was also testimony from business associates that Bressie's reputation was good.

It is upon this evidence that the court denied separate maintenance to the wife and awarded Bressie, the plaintiff, a divorce.

■ Mrs. Bressie, the appellant, first contends that the court erred in granting the plaintiff a decree in that he failed to prove that she left him without reasonable cause. Bressie testified that he had at all times treated his wife kindly up to the point when she came forth with the novel notion that they had never really been married. The record indicates that she left without cause and with the intention of not returning, so the proof on this score is adequate to sustain the decree.

■ It is also contended that there was no proof that Bressie was the innocent and injured party. It is true that he struck defendant on the day of the separation, but he was apparently goaded to exasperation by her assertions that the marriage of twenty years was in fact a nullity and her further statement that she desired to be single. We have repeatedly held that the term "innocent and injured party" does not mean a party without fault. Rowland v. Rowland, Mo.App., 227 S.W.2d 478, loc. cit. 484. In order to deny a divorce on this ground it must be shown that the party seeking relief was guilty of a continuing course of conduct manifesting dislike for the other party and an alienation and estrangement. Rowland v. Rowland, supra; Scheer v. Scheer, Mo.App., 238 S.W.2d 865; Kendrick v. Kendrick, Mo.App., 251 S.W.2d 329; Chapman v. Chapman, Mo. App., 230 S.W.2d 149.

It is clear that if the acts complained of on the day of the separation were wrongfully brought about by the complaining party they afford her no grounds for relief. Nor do they bar her husband from the relief that he sought. She stated from the witness stand that she did not consider that she was married to the plaintiff and from this and all the other evidence it does not appear that the occurrence that took place on the day of her departure was sufficient to bar the plaintiff from a decree.

■ It is not evident from the defendant's cross bill whether she charges the plaintiff with adultery or merely charges that his association with other women was an indignity which justified her leaving him. If it was adultery that she sought to charge, we find, other than defendant's own statement that the plaintiff boasted of associating with other women, that only two instances of such association were proven. Neither instance was sufficient to prove adultery, and since they occurred long after the defendant left the plaintiff it could not be said that they were indignities which caused her departure. She had been gone for over three years and contended at all times that she was not married to the plaintiff. While under other circumstances such acts as those of the plaintiff might constitute a bar from the relief that he seeks, we do not think that they were of sufficient force to do so upon the facts before us. Nor does it appear that anything he did was the real cause of the separation which seems to stem from the defendant's obsession that she was not really married.

■ The appellant also maintains that Bressie consented to the separation and that where a separation takes place by mutual consent of the husband and wife neither can claim abandonment within the meaning of the divorce statute. The rule relied upon is properly stated, for it would not be logical to entertain a complaint from either party about a situation brought on by the concurrence and consent of both. Nolker v. Nolker, Mo.Sup., 257 S.W. 798, loc. cit. 807; Clark v. Clark, 143 Mo.App. 350, loc. cit. 355, 128 S.W. 218. The evidence relied upon to indicate consent stems in part from the defendant's testimony. She stated that when she told the plaintiff she would never return he said: "That's exactly what I want. That's fine with me." Shortly after her departure he also told one of his sons

that he did not care if his wife ever came back. These words relied upon as indicating consent were spoken in resentment and anger and were not expressions of a genuine desire for the defendant to leave. They were words of retaliation rather than consent and must be so regarded, for the evidence leaves no doubt that Bressie time after time sought to persuade his wife to return.

It is contended that the plaintiff's testimony could not be believed in that some of his statements on the witness stand were in conflict with the testimony given in depositions taken. Most of this relates to money earned and spent, and all of the amounts mentioned were in the nature of approximations. There was no gross conflict in his testimony upon this subject.

 It is also urged that he perjured himself when he signed a statistical affidavit required by the circuit court to be sworn to and filed with his petition for divorce. One of the questions asked on the form is whether or not the signer has been previously married and to this the plaintiff answered "no". He later stated on the witness stand that he had been previously married before a justice of the peace many years before. He said that the cohabitation under that marriage was only of a few hours duration and that the affair terminated in a divorce. He stated that he had forgotten the whole matter when he filled out the information blank. There is no suggestion that the defendant did not at all times know of the prior marriage and the fact that there was one is not material to any issue before us. As stated in Bush v. Kansas City Public Service Co., 350 Mo. 876, 169 S.W.2d 331, 334:

> "The falsehood which will authorize the disregarding of a witness' testimony must be as to a material matter, or at least as to a matter which the witness believes to be material, and a witness is not to be discredited because of a discrepancy, or contradiction, or even deliberate falsehood as to an irrelevant or immaterial matter."

We cannot, therefore, say that all of the plaintiff's testimony was beyond belief even if we should conclude that the affidavit to the information given was falsely made.

For the reasons stated, there appears to be no error in the trial court's finding and it is the recommendation of the Commissioner that the judgment be affirmed.

PER CURIAM.

The foregoing opinion of WOLFE, C., is adopted as the opinion of the court.

The judgment of the circuit court is accordingly affirmed.

ANDERSON, P. J., and RUDDY and BENNICK, JJ., concur.