**STATE of Missouri, Respondent,**

v.

**Michael E. MADSEN, Appellant.**

No. 71125.

Supreme Court of Missouri,
En Banc.

June 13, 1989.

Rehearing Denied Aug. 1, 1989.

James W. Fletcher, Kansas City, for appellant.

William L. Webster, Atty. Gen., John Munson Morris and Elizabeth L. Ziegler, Asst. Attys. Gen., Jefferson City, for respondent.

BLACKMAR, Judge.

The defendant was convicted of forcible rape (§ 566.030, RSMo 1986) and forcible sodomy (§ 566.060, RSMo 1986). He appeals, invoking the jurisdiction of this court through a challenge to the constitutional validity of the "rape shield" statute, § 491.015, RSMo 1986. Although most of

his constitutional challenges have been ruled against his position in earlier cases, cited in Part I of this opinion, he does present one ground which apparently has not been asserted before and so we accept jurisdiction.

■ The appellant's brief, duplicated from typewritten copy, violates our Rule 81.17 by making use of one and one-half spaces between lines rather than double spacing. The result is a brief substantially longer than would be permitted by Rule 84.04(i), absent special permission. The longer brief has not been helpful to us. It could have profited by condensation and clarification. We nevertheless consider the points raised on the merits and, having done so, affirm the conviction.

### I.

The first portion of the brief is directed at the constitutionality of the "rape shield" statute, § 491.015.[1] The defendant and the victim were not previously acquainted. She claimed that she was walking along the side of an important thoroughfare in Independence during the late evening hours, intending to visit friends, when the defendant stopped his car beside her, displayed a knife, and forced her to accompany him. The defendant claimed that he had picked her up in a parking lot outside a combination bar and pool hall and that she had willingly accompanied him as he drove her to his parents' house in eastern Jackson County. She claimed that she submitted to sexual and sodomitic relations only because of the defendant's threats and the display of the knife. He said that she submitted voluntarily. He does not deny the sodomy, but claims that it too was consensual.

The trial judge sustained the prosecutor's motion in limine, directing defense counsel not to refer to any prior sexual relationship between the victim and other men. Counsel, during the course of the trial, offered to prove (1) that the victim was the mother of illegitimate children who had different fathers, (2) that she was living with one S. in a room in his parents' home at the time of the incident and had regular sexual relations with him, and (3) that she had periodic meetings and sexual involvements with still another man at the home of mutual friends. Almost all of his claims of error relate to his attempts to establish the victim's promiscuity, suggesting that she was free with her favors and therefore not resistant to the his advances when they met during her late evening sortie. The inferences he suggests have often been argued in rape trials over the years but were expressly rejected in the rape shield statute.

■ The defendant initially challenges the constitutional validity of the rape shield statute. Most of the constitutional points have been decided in earlier cases, which we adhere to. *State v. Brown*, 636 S.W.2d 929 (Mo. banc 1982); *State v. Jones*, 716 S.W.2d 799 (Mo. banc 1986).[2] We specifi-

1. Section 491.015, RSMo 1986, reads in part as follows:
   1. In prosecutions under chapter 566, RSMo, or prosecutions related to sexual conduct under chapter 568, RSMo, opinion and reputation evidence of the complaining witness' prior sexual conduct is inadmissible; evidence of specific instances of the complaining witness' prior sexual conduct or the absence of such instances or conduct is inadmissible, except where such specific instances are:
   (1) Evidence of the sexual conduct of the complaining witness with the defendant to prove consent where consent is a defense to the alleged crime and the evidence is reasonably contemporaneous with the date of the alleged crime; or
   (2) Evidence of specific instances of sexual activity showing alternative source or origin of semen, pregnancy or disease;

   (3) Evidence of immediate surrounding circumstances of the alleged crime; or
   (4) Evidence relating to the previous chastity of the complaining witness in cases, where, by statute, previously chaste character is required to be proved by the prosecution.
   2. Evidence of the sexual conduct of the complaining witness offered under this section is admissible to the extent that the court finds the evidence relevant to a material fact or issue.

   \* \* \* \* \* \*

2. The writer adheres to the views expressed in his dissenting opinion in *Jones,* as to the existence of circumstances in addition to those set out in the statute in which prior sexual activity may be admissible. The point is not material in the disposition of this case because, as the ensuing discussion shows, this record presents no such circumstances. I would also adhere to the

cally rejected the assertion that the statute is violative of the rule of *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), in *Brown,* 636 S.W.2d at 934 n. 6. *Davis* expressed the proposition that a criminal defendant may not be denied the opportunity to introduce any relevant evidence and, specifically, that he could impeach a prosecution witness by use of the witness's juvenile record, because of its substantial bearing on the witness's credibility. We have sustained the legislature's judgment as to the irrelevance of the victim's prior sexual conduct. None of the exceptions recognized by the rape shield law would apply here, and we are informed of no circumstances by reason of which this victim's prior conduct would be otherwise material in this case.

▮▮▮▮ The defendant makes the novel argument that the rape shield law is unconstitutionally vague and "overbroad" because of its failure to define "sexual conduct." We reject this argument also. It is not claimed that the victim had previously engaged in any sexual behavior other than conventional intercourse. The doctrine of vagueness in criminal law is directed at statutes which specify the criminal conduct on which charges are based, and holds that a criminal statute must be sufficiently definite and clear so that the potential violators know what standards of behavior they must adhere to.[3] Overbroadness is a concept appropriate in first amendment cases and may be used to invalidate a statute which, while legitimately punishing unprotected conduct, is so broadly worded that it might be read as punishing protected speech, thereby leaving people in doubt as to the limits of free expression.[4] The rape shield statute is not designed to instruct the defendant about the conduct he must avoid. It exists, rather, to protect the victim. The challenge on the basis of indefi-

niteness and overbreadth is without legal foundation.

## II.

The defendant complains about the following exchange, which took place during the cross-examination of the victim:

Q Did you at any time—after you got out of the car, did you ever see the knife again?

A Before the bedroom?

Q At any time.

A When he cut the ropes off my wrists.

Q Do you recall, Ms. [J.], back on June 1, testifying that you—

MR. WHITWORTH: Judge, objection. This is ridiculous. He's picking up things he wants to read out of the prior court proceeding, and it's not fair to her. There have been many, many hours of—

MR. FLETCHER: Your Honor, I'm attempting to impeach her with her prior inconsistent statements.

MR. WHITWORTH: But, Judge, he's got to lay a proper foundation. It's not fair for him *to pick out things from these depositions that she's had to subject herself to.* It's not fair. (Emphasis supplied).

(Whereupon, the following proceedings were had out of the hearing of the Jury:)

MR. FLETCHER: Your Honor, I want to object to these comments that she's had to subject herself to it. May we have a recess? I want to move for a mistrial.

THE COURT: The motion is overruled.

MR. FLETCHER: Well, I think it's improper for the prosecution to insinuate that she's had to subject herself to depositions. There are rules that allow the defendant and, in fact, say he has the right to take the deposition. If the defendant's invocation of his constitutional

---

well reasoned opinion in *State v. Ray,* 637 S.W.2d 708 (Mo. banc 1982), in which the victim admitted to plural involvements at the same location, and the Court held that the possibility of confusion made the evidence admissible.

**3.** *Grayned v. City of Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222

(1972); *State v. Young,* 695 S.W.2d 882, 884 (Mo. banc 1985).

**4.** *Broadrick v. Oklahoma,* 413 U.S. 601, 612, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973); *State v. Young,* 695 S.W.2d at 884.

rights and statutory rights is subjecting this woman to something, then it's an improper comment and I would ask for a mistrial, or ask that the Jury be instructed to disregard the last comment of the prosecuting attorney.

THE COURT: The motion for a mistrial is overruled, and the motion to instruct the Jury is overruled.

MR. FLETCHER: Your Honor, page one fifty-five of the previous testimony:

"QUESTION: When was the next time, or did you ever see the knife again? ANSWER: No, sir.

"QUESTION: You never saw it after the initial ride in the car? ANSWER: Not that I can remember, no, sir."

I think I'm entitled to show that she has now changed her testimony. This certainly is relevant and material, because they've alleged that these acts were the result of forcible compulsion.

THE COURT: You can impeach her with a proper foundation, and you've not done that.

■ The defendant's specific complaint is about the prosecutor's comments such as "these depositions that she's had to subject herself to." He argues that he was prejudiced before the jury by the prosecutor's depreciating the exercise of his right to depose the victim. The comments should not have been made. The defendant had the right to take the deposition and should not be criticized in front of the jury for having exercised the right. The error, however, does not require reversal. The matter of declaring a mistrial is initially for the trial judge to resolve, in the context of the entire case.[5] The brief remarks complained of were made during the course of a tense trial situation. The judge was alert, not without reason, to attempts to inject the victim's sexual history. He might have made the matter easier by instructing the jury to disregard the offensive remarks because, by overruling the motion for instructions, he may have given the jury the impression that the comments

were not improper. We nevertheless do not consider them particularly damaging.

■ The transcript shows several acrimonious exchanges between defendant's counsel and the trial judge during the course of the victim's cross-examination. Counsel tried to impeach the victim by showing inconsistencies between her trial testimony and her deposition testimony. When he put questions in the form of "... do you recall testifying concerning whether or not the Hatlers had a phone," the court would regularly sustain prosecution objections such as "it's not fair to her for him to do this...." When defense counsel inquired about the ruling, the court responded that proper foundation had not been laid. At one point the court remarked:

I'm not going to give you an education, Counsel. You've not laid a proper foundation to read from prior testimony of this witness. She has not denied making any statement that you have attempted to read....

It might appear at first blush that the court would not allow counsel to call the victim's deposition to her attention as a preliminary to asking her whether she remembered giving the testimony. The judge, no doubt, could insist that counsel read questions and answers from the deposition to the witness and then ask whether she remembers the examination, rather than paraphrasing or summarizing the deposition testimony. If this is the problem he sensed, he should make his requirements clear to counsel in preference to dismissing the inquiry with a snippy remark. If the court had given clear directions about what he expected time would probably have been saved. The disposition of the objections is not a model.

The appellant's brief complains in general terms about the court's restriction of the cross-examination. Because of our concern about the essential fairness of the proceedings we have reviewed the cross-examination of the victim carefully. It appears that when counsel first confirmed the witness's trial testimony and then read argu-

---

5. *State v. Schneider*, 736 S.W.2d 392, 400–01 (Mo. banc 1987); *State v. Anderson*, 698 S.W.2d 849, 852–53 (Mo. banc 1985); *State v. Gilmore*, 681 S.W.2d 934, 943 (Mo. banc 1984).

ably inconsistent questions and answers from the deposition, the witness was permitted to respond as to whether she remembered giving the answers. By the end of the examination at least, counsel apparently perceived what the court required and could have proceeded with impeachment by means of any inconsistent answers he deemed significant. Counsel freely argued to the jury about the inconsistencies, including varying statements as to whether the Hatlers had a telephone. We conclude, from the whole exchange, that the defendant has not sustained the burden of showing reversible error.

▮ Further complaint is made that the court unduly restricted the scope of the cross-examination. The victim told the police that she had not had sexual relations with any person other than the defendant within 24 hours of the assault. On her first deposition she extended the time to 48 hours. It is asserted that on a second deposition she admitted that these statements were not true. Counsel complains that he was not allowed to show the inconsistencies. There is no error. Inasmuch as the defendant admitted having had relations with the victim, there is no issue of identification in the case. The attempted impeachment, then, would be inadmissible under the rape shield statute. There is no right to impeach by showing inconsistent statements unless those statements are relevant and admissible.[6]

▮ Defense counsel sought to bring out on cross-examination that the victim lived with S. out of wedlock and had regular sexual relations with him. He points to the "surrounding circumstance" exception of the rape shield statute (§ 491.015.1(3)) and suggests that her relationship with S. gave her a motive for making false claims of rape when she appeared in their shared room during the early morning hours following the incident. S. arguably would ask where she had been and would not be pleased if she admitted having been picked up at a pool hall. The inference is tenuous,

to put it mildly. There is no testimony that S. demanded an explanation. What the testimony shows is that S. was sleeping soundly and was stirred to waking only with some difficulty after she told him that she had been raped. There is no indication that she parried a demand for accounting with a false accusation of rape. The court was entitled to balance the policy behind the rape shield statute against the attenuated inference the defendant sought to draw. The ruling was amply within his discretion.

▮ The remaining complaints about the cross-examination suggest essentially, that the victim's sexual conduct shortly before the alleged rape should be admissible as a surrounding circumstance in spite of the rape shield statute. The incidents relied on did not "surround" the alleged assault. Thus the holding of *State v. Gibson*, 636 S.W.2d 956 (Mo. banc 1982), is not helpful to the defendant. The suggestion that she had a motive for reporting a rape because of fear that she had become pregnant by one of her several partners, and the sense that she could more easily secure an abortion if she had been raped, is fanciful. The whole argument boils down to a claim that the rape shield statute unconstitutionally deprives the defendant of the benefit of relevant and material evidence. We have already rejected that contention.

Reversal is not required on account of the several incidents during cross-examination of the victim.

### III.

▮ The defendant sought to interrogate S. about his continuing sexual relationship with the victim. He argues that the rape shield statute applies only to the testimony of the victim, pointing to the boldfaced caption of § 491.015, reading, "Prosecuting witness not to be interrogated in certain cases as to prior sexual conduct." The caption, however, is not a part of the statute and cannot vary its express

---

**6.** *Bush v. Kansas City Pub. Serv. Co.,* 350 Mo. 876, 169 S.W.2d 331, 333 (1943); *Bressie v. Bres-* *sie,* 266 S.W.2d 24, 28 (Mo.App.1954).

terms.[7] Acts passed by the legislature and signed by the governor do not have bold-face captions. These are added by the reviser of statutes in order to provide a useful tool for readers. The theory of the rape shield statute, that prior sexual activity is not probative of the issue of rape unless one of the statutory exceptions obtains, applies not only to the victim's testimony on cross-examination but also to the testimony of other witnesses. Thus we have held that even the defendant may not testify about the victim's prior conduct unless the case fits one of the statutory exceptions.[8]

What we have said disposes of the claim that the court erred in not requiring S. to answer deposition questions about his prior sexual relationship with the victim. The answers were not admissible either as primary evidence or for impeachment, and so there would be no reason to compel deposition testimony following the witness's refusal to answer.

### IV.

The state endorsed Patsy Miller, an employee of the Independence police department, on the information as an expert witness. She apparently conducted blood typing analysis on specimens recovered from the defendant's house and car and of vaginal swabs taken from the victim after the incident. The victim testified that her finger had been cut on the defendant's knife at some point during the abduction and attack, and that she wiped blood off on a towel. Counsel would like to show that the blood on the identified towel was not of her type, for its bearing on her credibility. The state did not call Miller as a witness. Defense counsel complained in argument about the failure of the state to produce evidence that the investigating officers had found blood at the scene, intimating that there was no blood.

The defendant proffers two complaints. It appears that Miller was denied certification as a qualified serologist after she failed to pass tests administered by the certifying body. He argues that a mistrial should have been granted because the state violated its discovery obligations in not advising him of this circumstance. He also makes the somewhat inconsistent argument that he should have been able to introduce the test results for such weight as the jury might accord them because the police department had allowed Miller to conduct tests in the past, even though her expert qualifications had been called into question.

We reject these arguments. A laboratory report could not be considered exculpatory unless the tests had been administered by a competent technician. The question of an expert's qualifications is addressed in the first instance to the trial court. *State v. Mallett*, 732 S.W.2d 527, 537 (Mo. banc 1987). Miller's inability to pass blood typing proficiency tests provides ample reason for not permitting her to testify as an expert on serology. If her testimony could be rejected, the written report of the tests she administered could likewise be excluded. *State v. Rhone*, 555 S.W.2d 839, 841 (Mo. banc 1977). Thus, the production of the test information, whether before or during trial, would not benefit the defendant.

### V.

The defendant complains that he was not allowed to show by evidence that the victim, though never married, was at the time of the incident the mother of two children who had different fathers. He argues that the rape shield statute would not bar this evidence. We reject the point because we perceive no purpose for the offer except to demonstrate that the victim had not led a chaste existence. Use of the evidence for this purpose is precluded by the rape shield statute and there is no suggestion of any other proper purpose. Some judges would not rule out the bare

---

7. *Bullington v. State*, 459 S.W.2d 334, 341 (Mo. 1970); *State ex rel. Missouri Hwy. and Trans. Comm'n v. Appelquist*, 698 S.W.2d 883, 894 (Mo. App.1985); *State ex rel. Rybolt v. Easley*, 600 S.W.2d 601, 606 (Mo.App.1980).

8. *State v. Jones, supra.*

showing by the defense that the victim had children, but it has no bearing on the issues in the case and there was no error.

## VI.

█ The defendant finally complains that he was not allowed to testify about the details of lengthy conversations with the victim, before and after their sexual encounter, in support of his theory that the victim consented. The jury might think it unlikely that a rape victim would engage in substantial discourse with her rapist. The trial judge did not forbid this showing. He took action only when counsel sought to introduce forbidden subjects, such as the victim's having children, and her "problems" with her boyfriends. We are persuaded that counsel was not denied the opportunity to make his point. The defendant was not restricted in his testimony about the conversation except when it took an explicit turn in referring to the children, or relations with the "boyfriends."

It is manifest from the record that the victim had not led a cloistered existence. The evidence shows that she was living with one man while regularly visiting with another, whom she was accustomed to meet at the home of friends, and that, on the night of the incident, she was wandering about the streets at a late hour on a roundabout route which she did not clearly explain. Counsel argued these items to the jury, freely and without interruption. The jury could draw whatever inferences it chose from the circumstances. The trial judge took action only when it appeared that counsel was trying to interject explicit details about her sexual history. The defendant was allowed to present his essential theory.

The judgment is affirmed.

BILLINGS, C.J., and ROBERTSON, RENDLEN, HIGGINS and COVINGTON, JJ., concur.

WELLIVER, J., dissents.