STATE OF MISSOURI, Respondent,

v.

Glenn Spencer GERHART, Appellant.

No. WD 62083.

Missouri Court of Appeals,
Western District.

March 30, 2004.

Nancy A. McKerrow, Columbia, MO, for appellant.

Charnette D. Douglass, Assistant Attorney General, Jefferson City, MO, for respondent.

Before JOSEPH M. ELLIS, Chief Judge, HAROLD L. LOWENSTEIN, Judge, and VICTOR C. HOWARD, Judge.

JOSEPH M. ELLIS, Chief Judge.

Appellant Glenn S. Gerhart was charged by information in the Circuit Court of Cooper County with four counts of statutory rape in the first degree, § 566.032,[1] and one count of felonious restraint, § 565.120.

---

1. All statutory references are to RSMo 2000, unless otherwise noted.

Appellant was tried by jury beginning August 14, 2002. He was subsequently found guilty of four counts of first-degree statutory rape. The jury recommended sentences of ten years on each count and, thereafter, the trial court sentenced Appellant to four consecutive terms of ten years in the Missouri Department of Corrections. This appeal followed.

Appellant does not challenge the sufficiency of the evidence to support his conviction. Rather, Appellant's points on appeal are directed at the trial court's exclusion of certain evidence and a claim that the prosecution improperly elicited testimony regarding his exercise of his constitutional right under the Fifth Amendment to remain silent. Accordingly, a brief summary of the evidence, as opposed to a detailed recitation, is sufficient.

Viewed in the light most favorable to the verdict, the evidence revealed that in October of 2000, Appellant and his wife Kimberly were both employed at the Tipton Correctional Center. They lived in a home outside of California, Missouri, with their daughter, A.G., and Kimberly's daughter, H.M., and son, K.M. At that time, H.M., the oldest of the three children, was thirteen years old. H.M. testified that Appellant (1) performed oral sex on her and had sexual intercourse with her on October 2, 2000; (2) had sexual intercourse with her on October 4, 2000; (3) performed oral sex on her and had sexual intercourse with her on October 6, 2000; and (4) handcuffed her to the bed and had sexual intercourse with her on October 7, 2000. H.M.'s accusations formed the basis for the charges brought against Appellant and her testimony was the primary evidence against him.

Appellant, Kimberly, and the children were members of the New Creation Bible Church in Sedalia, Missouri. This non-denominational church was founded by Tony and Merry Kroeger, who apparently were the co-pastors. From the record, it is unclear whether the church had any written organizational rules but some of the testimony in the record would suggest that doctrine was more or less whatever the Kroegers decided as events occurred. Avanell McMullin was also a member of the church. After H.M.'s allegations came to light, various conversations were had by Appellant, Kimberly or H.M. with Tony and/or Merry Kroeger, or Ms. McMullin. Further evidentiary details will be added as needed throughout this opinion.

In his first point, Appellant claims that the trial court erred in excluding evidence that H.M. had told Avanell McMullin in December 2000 that she had been pregnant with Appellant's child in 1999 but had miscarried after five months. Appellant made offers of proof that H.M. would testify that she never made such a statement and that Ms. McMullin would testify that H.M. did in fact tell her that she had been pregnant with Appellant's child in 1999 but miscarried after five months. Appellant contends that he should have been allowed to introduce evidence that H.M. had made that statement and to then attempt to prove that statement false in an effort to challenge the credibility of H.M.'s testimony, upon which the State's case was based.

Prior to trial, the State filed a motion in limine seeking to exclude McMullin's testimony about her conversation with H.M., asserting that this evidence should be excluded as improper evidence of prior sexual conduct under the Rape Shield Law, § 491.015, and also as a privileged communication with a member of the clergy under § 491.060(4). The trial court granted the State's motion.

"A trial court has broad discretion in deciding whether to admit or ex-

clude evidence at trial," and its ruling will not be disturbed absent a clear abuse of that discretion. *State v. Sales,* 58 S.W.3d 554, 558 (Mo.App. W.D.2001). The trial court will be found to have abused its discretion when its "ruling is 'clearly against the logic and circumstances before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration.'" *Id.* (quoting *State v. Brown,* 939 S.W.2d 882, 883 (Mo. banc 1997)). "If reasonable persons can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." *State v. Biggs,* 91 S.W.3d 127, 133 (Mo.App. S.D.2002).

To the extent that the trial court excluded McMullin's testimony under the Rape Shield law,[2] such a ruling was clearly erroneous. Section 491.015 provides, in relevant part, that:

1. In prosecutions under chapter 566, RSMo, or prosecutions related to sexual conduct under chapter 568, RSMo, opinion and reputation evidence of the complaining witness' prior sexual conduct is inadmissible; evidence of specific instances of the complaining witness' prior sexual conduct or the absence of such instances or conduct is inadmissible, except where such specific instances are:

   (1) Evidence of the sexual conduct of the complaining witness with the defendant to prove consent where consent is a defense to the alleged crime and the evidence is reasonably contemporaneous with the date of the alleged crime; or

   (2) Evidence of specific instances of sexual activity showing alternative source or origin of semen, pregnancy or disease;

   (3) Evidence of immediate surrounding circumstances of the alleged crime; or

   (4) Evidence relating to the previous chastity of the complaining witness in cases, where, by statute, previously chaste character is required to be proved by the prosecution.

2. Evidence of the sexual conduct of the complaining witness offered under this section is admissible to the extent that the court finds the evidence relevant to a material fact or issue.

In this case, the State elicited testimony indicating that Appellant had begun sexually assaulting H.M. when she was five years old and began having intercourse with her several times per week starting when she was eight years old. The testimony that Appellant sought to admit related to allegations allegedly made by H.M. to Ms. McMullin in December 2000, after H.M. had told the Kroegers and her mother that Appellant had been raping her and the police had begun their investigation. Appellant's offer of proof reflects that he would have asked H.M. if she had ever claimed that she had been pregnant with Appellant's child but had miscarried. Once H.M. denied making such an allegation to Ms. McMullin, as Appellant's offer of proof reflects she would have, Appellant would have introduced Ms. McMullin's testimony about this prior inconsistent statement to impeach H.M.'s testimony.

**2.** From the record, it is questionable whether the trial court excluded this testimony under § 491.015. The trial court clearly found that the testimony was incompetent under § 491.060(4) as a confidential comment made to a minister and, while briefly discussing the State's argument under the Rape Shield law, does not appear to have offered a definitive ruling on the subject.

While in some instances evidence of a prior pregnancy or pregnancies might constitute improper evidence of prior sexual conduct by the victim, in this case, the evidence of the relevant prior sexual conduct was admitted into evidence by the State on direct examination of the victim. The evidence sought to be introduced by Appellant related to the collateral consequences of the alleged sexual acts that were already in evidence. Appellant intended to introduce the evidence that H.M. had made these allegations and to then demonstrate that they were not credible in an effort to impeach H.M.

■■■■ Section 491.015 "does not preclude introduction of evidence of prior allegations by an alleged victim of sexual abuse if that evidence is offered to impeach the credibility of the victim as a witness." *State v. Scott,* 78 S.W.3d 806, 810 (Mo.App. S.D.2002). Thus, allowing Appellant to cross-examine H.M. about whether she had told Ms. McMullin that Appellant's sexual assaults upon her had led to a pregnancy and miscarriage would not run afoul of the Rape Shield statute. Furthermore, once H.M. denied having ever been pregnant with Appellant's child or ever telling anyone that she had been, as the offer of proof indicates she would have, Appellant would have been entitled to elicit Ms. McMullin's testimony about H.M.'s prior inconsistent statement in order to impeach H.M., because a witness may be impeached by extrinsic proof of a prior inconsistent statement " 'if the alleged discrepancy ... relates to 'any part of the witness' account of the background and circumstances of a material transaction, which as a matter of human experience he would not have been mistaken about if his story were true.' " [3] *State v. Williams,* 849 S.W.2d 575, 578 (Mo.App. E.D.1993) (quoting *State v. Foulk,* 725 S.W.2d 56, 65 (Mo.App. E.D.1987)).[4]

Moreover, the excluded testimony does not elicit any further evidence of prior sexual conduct by H.M. than was brought out by the State in its direct examination of her. Having introduced H.M.'s testimony that Appellant had repeatedly sexually assaulted her over a period of years and further introduced evidence of some of the allegations made by H.M. to other people about those sexual assaults, the State was not entitled to have evidence of other allegations made by H.M. related to those sexual assaults excluded under § 491.015. Thus, the trial court erred to the extent it relied upon § 491.015 to exclude that evidence.

■■■■ This does not, however, end our inquiry regarding these statements, as Ms.

---

3. "A defendant can impeach a prosecuting witness with prior inconsistent statements, but the impeachment may not concern an immaterial or collateral matter." *State v. Dunson,* 979 S.W.2d 237, 242 (Mo.App. W.D. 1998). "A matter is considered to be collateral if the fact in dispute is of no material significance in the case or is not pertinent to the issues developed." *Id.* In contrast, " '[a] matter is not collateral if the alleged discrepancy involves a crucial issue directly in controversy or relates to any part of the witness account of the background and circumstances of a material transaction, which as a matter of human experience he would not have been mistaken about if his story were true.' " *State v. Williams,* 849 S.W.2d 575, 578 (Mo.App.

E.D.1993) (quoting *State v. Foulk,* 725 S.W.2d 56, 65 (Mo.App. E.D.1987)).

4. This is not to say that the fact that H.M. may have lied about becoming pregnant and miscarrying as a result of Appellant's sexual abuse disproves her testimony that she was being sexually abused. Rather, her alleged untruthful statements regarding pregnancy are so intertwined with, and part of her account of the background and circumstances of her "story," *State v. Williams,* 849 S.W.2d at 578, i.e., the extended period of abuse, as to permit an inference regarding her credibility on the material transaction, the alleged sexual abuse.

McMullin's testimony was expressly excluded by the trial court under § 491.060(4) as a confidential statement made to a member of the clergy in her capacity as a spiritual advisor, confessor, counselor or comforter. Appellant challenges the propriety of that ruling also. Accordingly, we must consider whether the trial court abused its discretion in excluding the evidence under that section.

Section 491.060(4) provides:

The following persons shall be incompetent to testify:

\* \* \*

(4) Any person practicing as a minister of the gospel, priest, rabbi or other person serving in a similar capacity for any organized religion, concerning a communication made to him or her in his or her professional capacity as a spiritual advisor, confessor, counselor or comforter;

The application of the statute requires the trial court to engage in a two step analysis: (1) the trial court must first determine whether the individual from whom the testimony is sought is a minister, priest, rabbi or other person serving in a similar capacity for an organized religion; and (2) the court must then decide whether the com-

munication made to them fell within the context of their professional duties as a "spiritual advisor, confessor, counselor or comforter." *§ 491.060(4).*

▮▮▮▮ The circumstances, facts and interests of justice dictate whether a privilege set forth in § 491.060 is applicable to a particular situation. *See State ex rel. Health Midwest Dev. Group, Inc. v. Daugherty,* 965 S.W.2d 841, 844 (Mo. banc 1998). The party seeking to invoke a privilege set forth in § 491.060 bears the burden of proving its applicability. *See Rodriguez v. Suzuki Motor Corp.,* 996 S.W.2d 47, 61–62 (Mo. banc 1999). Statutes creating "testimonial privileges are to be strictly construed against the privilege." *Id.*

The trial court found that Ms. McMullin was a minister in the church and that Ms. McMullin was acting in that capacity and providing H.M. with counseling and comforting during their telephone conversation in December 2000.[5] Appellant challenges the trial court's ruling on this issue, arguing that Ms. McMullin was not a member of the clergy as contemplated in § 491.060(4). He further contends that the telephone conversation between Ms. McMullin and H.M. was a normal, casual conversation between members of the same church, i.e. friends or acquaintances,

---

5. After hearing the evidence presented on the State's motion, the trial court found:

[T]he other issue claimed by the State is that these statements with regard to the alleged pregnancy—pregnancy and miscarriage were made to Witness McMullin under circumstances where [H.M.] reasonably believed that they were confidential pursuant to Section 491.060.

The evidence on that point is that Witness McMullin was a minister in the church, that she was a counselor to children in the church, that she had called up and talked to [H.M.] under these circumstances in a counseling mode, inquiring as to how she was getting along with regard to these problems that she was experiencing because of the alleged sexual intercourse with

the defendant and that she was engaged in prayer for her tended to support what [H.M.] states under oath was her belief, that they were—that the conversations were part of a counseling and comforting situation with someone she reasonably believed to be a, quote, minister or comforter or counselor with regard to the church congregation in which she apparently was and the family was extremely involved.

The Court believes it's a close issue, but based upon witness—or on [H.M.]'s testimony that she believed that it was that she was speaking confidentially to Witness McMullin, the Court will sustain the State's Motion to Exclude that testimony pursuant to the privilege set forth in Section 491.060.

and was not the type of communication covered under the statute.[6]

With regard to Ms. McMullin's position in the church, the trial court found that she was a "minister" within the church. The evidence to that effect is not particularly persuasive. However, we need not decide whether Ms. McMullin could properly be considered a member of the clergy as contemplated in § 491.060(4) because the record does not support a finding that the conversation between H.M. and Ms. McMullin was a communication made to her in her "professional capacity as a spiritual advisor, confessor, counselor or comforter." Both H.M. and Ms. McMullin described their conversation in December 2000 as a casual telephone conversation. Ms. McMullin testified that she had called H.M.'s home in response to a message left by Kimberly. She stated that, after H.M. answered the phone and told her that Kimberly was not home, she and H.M. began to have a general conversation in which she generally asked H.M., "How are you?" According to Ms. McMullin, H.M. responded that it had been an extremely rough day and then went on to tell Ms. McMullin that in 1999 she had miscarried a child, fathered by Appellant, after a five-month pregnancy. Ms. McMullin ended the conversation by telling H.M. that she would pray for her, the manner in which she often ended conversations with other members of the congregation. Ms. McMullin testified that she was not trying to solicit any spiritual conversation when she spoke with H.M. in December 2000 and that it was simply a "Hi, how are you" type conversation. Ms. McMullin further testified that H.M. had never come to her for advice or asked for spiritual guidance.

H.M.'s testimony about the conversation is nearly identical to Ms. McMullin's except for denying that she ever told her that she had been pregnant or that she had a miscarriage. H.M. stated that she did not discuss anything of a spiritual nature with Ms. McMullin during that conversation. She testified that Ms. McMullin asked how she was doing, that she told Ms. McMullin that she was okay, and that Ms. McMullin then told her that she would pray for her. H.M. also testified that she would have had a similar conversation with other members of the church and that Ms. McMullin was not someone that she would ever go to for advice.

The foregoing evidence is insufficient to support a finding that the H.M.'s com-

---

**6.** Appellant made no claim in the trial court, nor does he in this court, that the New Creation Bible Church is not an "organized religion" for purposes of § 491.060(4). Consequently, the trial court made no express finding on that element of the statute. We likewise do not address the issue but note that the phrase is not defined in the statute and doing so can be a vexing problem. The following is indicative of the dilemma:

I fear that the majority wanders into the forbidden thicket of the First Amendment in such a manner that, if a valid intrusion, will raise once again the centuries old inquiry into the propriety of government defining what constitutes an organized religion.... What does or does not constitute a church has addressed itself to the conscience of individuals and governments for centuries.

The Christian Church of Faith has evidentially convinced both the State of Tennessee and the United [S]tates Internal Revenue Service that it is, indeed, a church. We do not believe this Court, nor a jury in Shelby County, has the authority to withhold from any organization duly incorporated and recognized by secular authority, as a religious organization, the recognition claimed by the church said to be served by the Reverend Vance. If he is hiding behind a false and hypocritical religious facade, he is among many others who do so for various and plentiful reasons. A Higher Authority than ours will have to judge his sincerity. *Vance v. State*, 557 S.W.2d 750, 752, 754 (Tenn.Crim.App.1977) (Galbreath, J., dissenting).

ments to Ms. McMullin were made to her in her "professional capacity as a spiritual advisor, confessor, counselor or comforter." The trial court's ruling that Ms. McMullin was acting in her professional capacity as a member of the clergy to provide H.M. with counseling and comforting is simply not supported by the record.

Finally, we must assess whether Appellant was prejudiced by the trial court's erroneous rulings. "[T]he erroneous exclusion of evidence in a criminal case creates a presumption of prejudice which 'can only be overcome by a showing that such erroneous exclusion was harmless error beyond any reasonable doubt.'" *State v. Bowlin*, 850 S.W.2d 116, 118 (Mo.App. S.D.1993) (quoting *State v. Bashe*, 657 S.W.2d 321, 325 (Mo.App. S.D.1983)). The burden of showing that the exclusion was harmless beyond a reasonable doubt rests with the State. *Id.*

The State's case against Appellant hinged almost entirely upon the credibility of H.M., and Appellant's lone theory of defense was that H.M.'s testimony was not credible. As a result of the trial court's rulings, Appellant was precluded from cross-examining H.M. about her comments to McMullin about the alleged pregnancy and then introducing McMullin's testimony to impeach H.M. after she denied making them.[7] This evidence went directly to the central issue of Appellant's defense, i.e., that H.M. was untruthful and could not be believed. The State has failed to demonstrate how the exclusion of this evidence was harmless beyond a reasonable doubt. On the record before us, we simply cannot

find that the erroneous exclusion of the evidence related to H.M.'s alleged claims of pregnancy and miscarriage resulting from Appellant's sexual assaults was harmless beyond a reasonable doubt.[8] Consequently, we must reverse the trial court's judgment and remand for a new trial.

Before briefly discussing Appellant's other points, additional factual matters need to be mentioned. In 1998, H.M. told her mother, Kimberly, that Appellant had been molesting her. Kimberly confronted Appellant about the matter and ultimately concluded that H.M. was lying. As a result, Kimberly required H.M. to apologize to Appellant for making such accusations.

After H.M.'s year 2000 allegations became known, Tony Kroeger, Merry Kroeger, and Ms. McMullin were allegedly present on various occasions when Kimberly was discussing H.M.'s 1998 allegations against Appellant and heard Kimberly state that she had thought H.M. was lying and that H.M. had apologized to Appellant for making those accusations.

In his second point, Appellant contends that the trial court erred in excluding from evidence testimony from the Kroegers that Kimberly had told them that she thought H.M. had lied when she had accused Appellant of raping her in 1998. Appellant claims these statements were erroneously excluded from evidence under the clergy/penitent privilege contained in § 491.060(4). Appellant argues that the privilege did not apply because Kimberly's statements were not made in confidence or for the purpose of seeking comfort, counsel

---

7. At trial, H.M. testified that she had never been pregnant as a result of the sexual abuse of Appellant. During the offer of proof, H.M. testified that she did not tell McMullin that she had been pregnant or that she had a miscarriage.

8. Indeed, the trial judge's comments from the bench in ruling on the aforementioned issues reflect that, but for the application of § 491.060(4) and the Rape Shield Statute, he would have allowed Appellant to cross-examine H.M. about her statements to McMullin about the miscarriage.

or guidance. Appellant also asserts that Ms. McMullin should have been allowed to testify that she had heard Kimberly tell Mrs. Kroeger that H.M. had admitted lying about the 1998 allegations.

In Point III, Appellant contends the State improperly elicited testimony about his exercise of his constitutional right under the Fifth Amendment to remain silent.

Since we are granting Point I and reversing and remanding for a new trial, we need not address these other points. It is unlikely that the matters complained of in Point III will occur again on retrial. While the issues presented by Point II may arise again on retrial, and while judicial economy sometimes dictates that we address such matters, we decline to do so in this instance. From the record before us it does not appear Appellant's first assertion in Point II was properly preserved in that we cannot ascertain whether the trial court actually ruled on the issue, and the offer of proof contained in the record does not substantiate the secondary claim in that Point. For these reasons, the matters presented by Point II do not lend themselves to meaningful review that could be of guidance to the trial court.

The judgments of conviction are reversed, and the case is remanded to the trial court for a new trial.

All concur.