

# In the
# Missouri Court of Appeals
# Western District

| | | |
|---|---|---|
| **STATE OF MISSOURI,** | ) | |
| | ) | |
| **Respondent,** | ) | **WD82209** |
| | ) | |
| **v.** | ) | **OPINION FILED:** |
| | ) | **February 11, 2020** |
| **AUSTIN JOSEPH CAMPBELL,** | ) | |
| | ) | |
| **Appellant.** | ) | |

**Appeal from the Circuit Court of Boone County, Missouri**
The Honorable Jeff Harris, Judge

Before Special Division: Zel M. Fischer, Special Judge, Presiding, Cynthia L. Martin, Judge and Gary D. Witt, Judge

Austin Campbell ("Campbell") appeals his conviction of rape in the first degree. Campbell challenges the sufficiency of the evidence to support his conviction; the trial court's restriction of his cross-examination of a witness and of his closing argument; the trial court's admission of evidence; and the trial court's failure to provide a curative instruction during the State's closing argument. Finding no error, we affirm.

## Factual and Procedural Background[1]

On January 17, 2016, Victim returned to the University of Missouri-Columbia after an extended break between semesters. Victim lived in an on-campus dormitory. Victim and her friends organized a party in Victim's dorm room. A group message invited a large number of other dormitory residents to the party. Campbell, among other residents, attended the party, where he drank whiskey from a water bottle.

During the evening, those in attendance at the party moved from Victim's dormitory room to another room down the hall. Victim, who had been drinking, fell asleep on a bed. Eventually, Victim's friend assisted Victim back to her own room, where she fell asleep. The party ended shortly thereafter.

Lauren Lahey ("Lahey") lived in a dorm room down the hall from Victim. Lahey left her room to use the hallway restroom and saw Campbell standing outside of Victim's room. Campbell said he was missing his water bottle and thought he might have left it in Victim's room. Lahey looked in Victim's room, which was unlocked, but could not find the water bottle. Victim was asleep. Lahey told Campbell she would look for the water bottle in the morning. Lahey and Campbell went different directions down the hallway. After using the restroom, Lahey again checked on Victim, who was still asleep.

Campbell later entered Victim's room. Victim awoke to find Campbell on top of her, and having sexual intercourse with her. Victim pushed Campbell onto the floor.

---

[1]We view the evidence in the light most favorable to the jury verdict, disregarding all contrary evidence and inferences. *See State v. Brand*, 309 S.W.3d 887, 890 n. 2 (Mo. App. W.D. 2010).

Victim fled to the hallway bathroom. When she returned to her room, Victim found Campbell sitting on the floor. Victim ordered Campbell to leave, and locked her door.

Later that evening, Campbell saw Tanner Stetzel ("Stetzel") near the dormitory lounge. Campbell asked to speak with Stetzel alone. Stetzel described Campbell's appearance as sweaty and disheveled. Campbell told Stetzel that he had just finished "tucking in" Victim. When Stetzel asked "why," Campbell said because "that's what friends do," and walked away.

The next day, Victim went to the hospital and underwent a sexual assault examination. Victim's injuries were consistent with the sexual assault she described. Victim reported the incident to the police. Campbell was arrested and charged with rape in the first degree, and burglary in the first degree.

At Campbell's first trial, the jury was unable to reach a verdict. The State dropped the burglary charge and indicated its intent to retry Campbell on the charge of rape in the first degree. Prior to his second trial, Campbell filed a motion pursuant to section 491.015.3[2] seeking permission to interrogate Stetzel about Victim's prior sexual encounter with Stetzel. Following a hearing, the trial court denied Campbell's motion.

At Campbell's second trial, the jury found Campbell guilty of rape in the first degree, and the trial court entered a judgment of conviction and sentence. Campbell filed this timely appeal.

---

[2]All statutory references are to RSMo 2000 as supplemented through the date of the offense in January 2016 unless otherwise indicated.

3

## Analysis

Campbell raises six points on appeal challenging the sufficiency of the evidence to support his conviction; the trial court's restriction of his cross-examination of Stetzel; the trial court's admission of evidence of Campbell's sexual encounter with a man; the trial court's admission of lay opinion evidence from Lahey; the trial court's failure to provide a curative instruction during the State's closing argument; and the trial court's restriction of Campbell's closing argument. We address each point in turn.

## Point One

Campbell's first point on appeal argues that there was insufficient evidence to support his conviction of rape in the first degree.

Our "review of sufficiency of the evidence is limited to whether the State has introduced sufficient evidence from which a reasonable juror could have found each element of the crime beyond a reasonable doubt." *State v. Ajak*, 543 S.W.3d 43, 46 (Mo. banc 2018) (quotation omitted). "To determine whether the evidence presented was sufficient to support a conviction and to withstand a motion for judgment of acquittal, this Court does not weigh the evidence but, rather, accept[s] as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict, and ignore[s] all contrary evidence and inferences." *Id*. (quotations omitted) (alterations in original).

"A person commits the offense of rape in the first degree if he or she has sexual intercourse with another person who is incapacitated[.]" Section 566.030.1. Campbell challenges the sufficiency of the evidence to establish that Victim was incapacitated.

4

"Incapacitated" is defined as the "physical or mental condition, temporary or permanent, in which a person is unconscious, unable to appraise the nature of such person's conduct, or unable to communicate unwillingness to an act." Section 556.061(13). Given this definition, sufficient evidence permitted the jury to find that Victim was incapacitated at the time Campbell had intercourse with her. Victim had been drinking and had to be assisted to her own room. Victim was asleep in her room when Lahey entered the room on two occasions. This was not long before Campbell entered Victim's room. Victim awoke to find Campbell on top of her, kissing her, and sexually penetrating her. Victim testified that Campbell did not have permission to have sexual intercourse with her. Victim testified that after she awoke, she pushed Campbell off of her and retreated to a bathroom.

Campbell asserts that this evidence was insufficient to establish that Victim was incapacitated because "the only evidence presented [on incapacity] was that [Victim] did not recall speaking with [] Campbell or giving consent and believed she was asleep at the time the intercourse began." Campbell contends that Victim's "lack of memory of what happened" is "equally consistent with the fact that, as the result of her intoxication, she did not later remember the beginning of the encounter," thus the "two inference" rule operates to preclude a finding of guilt beyond a reasonable doubt. [Appellant's Brief, pp. 21-22]. Campbell's argument relies on *State v. Alul*, 948 S.W.2d 215 (Mo. App. E.D. 1997), and its discussion of the equally valid inferences rule.

Campbell's reliance on *Alul* is unavailing. The equally valid inferences rule has been abrogated. *State v. Chaney*, 967 S.W.2d 47, 54 (Mo. banc 1998) (holding that "[t]he equally valid inferences rule was effectively abolished"); *State v. Freeman*, 269 S.W.3d

5

422, 424, n. 4 (Mo. banc 2008) ("In *Chaney*, this Court expressly abrogated the 'equally valid inferences rule.'"); *see also State v. Hudson*, 970 S.W.2d 855, 859 (Mo. App. S.D. 1998) (recognizing that *Alul*'s application of the two inference rule was abrogated by *Chaney*). Instead, review of the sufficiency of the evidence to support a criminal conviction is governed by principles of due process. *See Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *State v. Grim*, 854 S.W.2d 403, 405 (Mo. banc 1993); *Chaney*, 967 S.W.2d at 52. Thus, "appellate review is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." *Chaney*, 967 S.W.2d at 52 (citing *Grim*, 854 S.W.2d at 405).

Given this standard of review, there was sufficient evidence to find that Victim was incapacitated at the time Campbell had sexual intercourse with her.

Point One is denied.

### Point Two

Campbell's second point on appeal argues that his constitutional rights were violated when the trial court refused to permit him to cross-examine Stetzel about Stetzel's prior sexual encounter with Victim for the purpose of impeachment. Specifically, Campbell argues that his rights to effectively confront and cross-examine witnesses pursuant to the Sixth Amendment, and to Missouri Constitution Article I, section 18(a),[3] were violated.

In prosecutions involving rape in the first degree and other criminalized sexual conduct, section 491.015.1 (known as the rape shield law) prohibits the introduction of

---

[3]The protections provided by Section 18(a) of the Missouri Constitution are coextensive with those of the Sixth Amendment. *State v. Hester*, 801 S.W.2d 695, 697 (Mo. banc 1991).

6

"evidence of specific instances of the complaining witness' prior sexual conduct . . ." unless the specific instance falls within one of four enumerated exceptions. Section 491.015.1(1)-(4). Even then, section 491.015.2 provides that "[e]vidence of the sexual conduct of the complaining witness offered under this section is admissible to the extent that the court finds the evidence relevant to a material fact or issue." *See State v. Jones*, 716 S.W.2d 799, 800 (Mo. banc 1986) (holding that "subsection 2 [of section 491.015] is directed only at the exceptions set forth in [section 491.015.1] (1), (2), (3), and (4)," such that evidence offered under the exceptions to section 491.015.1 is admissible "only 'to the extent that the court finds [it] relevant to a material fact or issue'"); *see also State v. Rycraw*, 507 S.W.3d 47, 56-57 (Mo. App. E.D. 2016) ("Generally, evidence is not independently admissible under the relevance test in Section 491.015.2; thus an express exception under subsection 1 must be met before proceeding to the relevance analysis under subsection 2."); *State v. Gorman*, 468 S.W.3d 428, 432-33 (Mo. App. W.D. 2015).

Section 491.015.3 describes the procedure to be followed by a defendant who proposes to offer evidence of the sexual conduct of a complaining witness. Campbell followed that procedure by filing a pre-trial motion accompanied by an offer of proof. In his motion, Campbell requested permission pursuant to section 491.015 to offer evidence that Victim and Stetzel had a sexual encounter. Campbell did not argue that this evidence fell within one of the four exceptions set forth in section 491.015.1(1)-(4). Instead, Campbell's motion argued that the evidence was independently admissible pursuant to section 491.015.2, "because the Rape Shield Law does not preclude the introduction of

7

evidence offered to impeach the credibility of a witness."[4] Campbell argued that he should be entitled to impeach Stetzel because Stetzel previously testified during a deposition that he had a "platonic" relationship with Victim, and then later admitted that he and Victim had a single sexual encounter more than four months prior to the incident involving Campbell. Campbell argued that Stetzel's testimony about the prior sexual encounter with Victim established Stetzel's bias, or motivation to fabricate.

The trial court denied Campbell's section 491.015 motion. At trial, Campbell made a similar offer of proof at trial in advance of Stetzel's testimony. The trial court once again refused to permit Campbell to cross-examine Stetzel about the prior sexual encounter with Victim for the purpose of impeachment.

Campbell's point on appeal now argues that application of section 491.015 to deprive him of the ability to impeach Stetzel violated his constitutional right to confront witnesses. The Confrontation Clause is implicated "when there is 'a specific statutory or court-imposed restriction at trial on the scope of questioning.'" *State ex rel. White v. Gray*, 141 S.W.3d 460, 464 (Mo. App. W.D. 2004) (quoting *Pennsylvania v. Ritchie*, 480 U.S. 39, 54 (1987)). "While a meaningful opportunity for cross-examination is necessary, 'the Confrontation Clause guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense

---

[4]The only authority cited by Campbell in his section 491.015 pre-trial motion was *State v. Gerhart*, 129 S.W.3d 893 (Mo. App. W.D. 2004). In *Gerhart*, the court held that a trial court erred in excluding evidence in reliance on 491.015 when that statute did not apply because the evidence sought to be admitted did not involve a specific instance of sexual conduct, but instead "related to the collateral consequence of the alleged sexual acts that were already in evidence." *Gerhart*, 129 S.W.3d at 897. Because section 491.015 was determined not to apply to the evidence at issue in *Gerhart*, *Gerhart* is of no relevance to this case.

8

might wish.'" *State v. Perry*, 275 S.W.3d 237, 244 (Mo. banc 2009) (quoting *United States v. Owens*, 484 U.S. 554, 557 (1988)).

Ordinarily, "whether a criminal defendant's rights were violated under the Confrontation Clause . . . is a question of law that this Court reviews *de novo*." *State v. March*, 216 S.W.3d 663, 664-65 (Mo. banc 2007) (citing *State v. Justus*, 205 S.W.3d 872, 878 (Mo. banc 2006)). That assumes, however, that Campbell's constitutional challenge has been properly preserved.

"'[T]he rule is clearly established that in order to preserve a constitutional issue for appellate review, it must be raised at the earliest time consistent with good pleading and orderly procedure and must be kept alive during the course of the proceedings.'" *Kirk v. State*, 520 S.W.3d 443, 457 (Mo. banc 2017) (quoting *State v. Liberty*, 370 S.W.3d 537, 546 (Mo. banc 2012)). Constitutional claims must be raised "'sufficiently early in the process to allow the trial court to identify and rule on the issue and to give adequate notice to the opposing party.'" *Id*. (quoting *In re Care & Treatment of Schottel*, 159 S.W.3d 836, 841 n. 3 (Mo. banc 2005)). Here, Campbell did not raise a Confrontation Clause claim in his written section 491.015 motion, during the pre-trial hearing on that motion, or at trial. Campbell's claim of a Confrontation Clause violation first appeared in his post-judgment Motion for Judgment of Acquittal and Alternative Motion for New Trial. This was not sufficient to preserve Campbell's constitutional claim for appellate review.

Campbell has not sought plain error review of his constitutional claim, "and the claim falls short of meriting relief under that standard." *Id*. at 457-58. Under plain error review, we must determine whether the alleged error is "evident, obvious, and clear error"

9

that "facially establishes substantial grounds for believing that manifest injustice or a miscarriage of justice" has occurred. *State v. Ellis*, 538 S.W.3d 335, 337 (Mo. App. W.D. 2017) (citing *State v. Baumruk*, 280 S.W.3d 600, 607 (Mo. banc 2009)). If error is found, then we must determine if the error actually resulted in a miscarriage of justice or manifest injustice. *Id.* Campbell cannot demonstrate evident, obvious, and clear error.

The Confrontation Clause did not require the trial court to permit Campbell to cross-examine Stetzel about his prior sexual encounter with Victim for the purpose of impeachment. "The [United States] Supreme Court has never 'held--or even suggested--that the longstanding rules restricting the use of specific instances and extrinsic evidence to impeach a witness's credibility pose constitutional problems.'" *State v. Raines*, 118 S.W.3d 205, 212-13 (Mo. App. W.D. 2003) (quoting *Hogan v. Hanks*, 97 F.3d 189, 191 (7th Cir. 1996)). "[T]he Supreme Court has held that the Confrontation Clause confers a right to cross-examine witnesses to expose bias or a motive to fabricate." *Id.* (citing *Olden v. Kentucky*, 488 U.S. 227, 231 (1988)). Though Campbell argues that Stetzel's admission that he had a prior sexual encounter with Victim was relevant to show bias, Campbell could not articulate to the trial court (despite being asked), and has not explained here, why Stetzel's sexual encounter with Victim would give Stetzel a motive to fabricate testimony about Campbell's appearance, demeanor, and comments when the two interacted in the dormitory lounge after Campbell left Victim's room. Notably, Campbell admits having sexual intercourse with Victim. He disputes only whether the intercourse was consensual. We fail to see how Stetzel's trial testimony materially impacted the determination of that issue. And we fail to see how Stetzel's prior sexual encounter with Victim would have

10

motivated him to fabricate what he claimed to have observed when he spoke with Campbell.

"Trial courts have broad discretion in limiting the scope of cross-examination." *Raines*, 118 S.W.3d at 213 (citing *State v. Dunn*, 817 S.W.2d 241, 245 (Mo. banc 1991)). "'[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on . . . cross examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" *Id*. at 214 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). Here, the trial court could reasonably have concluded that the connection between Stetzel's purported bias and his prior sexual encounter with Victim was tenuous at best, and that there was a significant risk that permitting cross-examination of Stetzel about his prior sexual encounter with Victim after both had been drinking would thwart the purpose of the rape shield law.[5] "The theory of the rape shield statute, that prior sexual activity is not probative of the issue of rape unless one of the statutory exceptions obtains, applies not only to the victim's testimony on cross-examination but also to the testimony of other witnesses." *State v. Madsen*, 772 S.W.2d 656, 661 (Mo. banc 1989). Here, the trial court "was entitled to balance the policy behind the rape shield statute against the attenuated inference [Campbell] sought to draw." *Id*.

Campbell argues that section 491.015.2 permits the admission of prior sexual conduct of a victim if it is independently relevant, and that impeachment evidence is always

---

[5]Campbell has not argued that he should have been permitted to cross-examine Stetzel because Stetzel had given prior inconsistent statements under oath.

11

relevant. We have already explained, however, that section 491.015.2 does not supply an independent statutory basis for admitting specific instances of a complaining witness's sexual conduct, and instead must be read in conjunction with the exceptions described in section 491.015.1(1)-(4), none of which are argued by Campbell to apply. *Jones*, 716 S.W.2d at 800.

Campbell also cites *State v. Murray*, 842 S.W.2d 122 (Mo. App. E.D. 1992) and *State v. Lampley*, 859 S.W.2d 909 (Mo. App. E.D. 1993) for the proposition that section 491.015 can never be applied to deprive a defendant of the constitutional right to impeach witnesses by cross-examination. Neither case stands for that broad proposition.

In *Murray*, the court held that evidence of a defendant's prior sexual conduct with the victim was admissible because the evidence qualified under one of the statutory exceptions set forth at section 491.015.1(1)-(4). *Murray*, 842 S.W.2d at 123-25 (evidence of prior sexual conduct between defendant and victim may be admissible to show consent under section 491.015.1(1)). Here, unlike *Murray*, the evidence Campbell sought to introduce did not qualify under an exception to section 491.015.1.

In *Lampley*, the court held that evidence of a victim's prior sexual abuse complaint was admissible because the evidence did not involve a specific instance of a complaining witness' sexual conduct, rendering section 491.015 inapplicable. *Lampley*, 859 S.W.2d at 911-12. Here, unlike *Lampley*, section 491.015.1 plainly applied to the evidence Campbell hoped to elicit from Stetzel on cross-examination.

Campbell also relies on *State v. Douglas*, 797 S.W.2d 532, 535 (Mo. App. W.D. 1990) for the proposition that the rape shield law must yield on every occasion to a

12

defendant's right to impeach witnesses. *Douglas* does not stand for this sweeping proposition. *Douglas* did recognize that "a rule of evidence, whether it has its origin in statute . . . or in common law . . . may not be narrowly or mechanistically applied to deprive a defendant of rights to confront and cross-examine witnesses and to call witnesses in his own defense, both rights essential to due process and guaranteed by the Fourteenth Amendment." *Id*. at 535. In applying this principle, Douglas recognized a limited exception to strict application of section 491.015 where a defendant seeks to present evidence to directly contradict specific evidence introduced by the State to prove a defendant's guilt. *Id*. at 534-35. *See State v. Sales*, 58 S.W.3d 554, 559 (Mo. App. W.D. 2010) (holding that "[t]he limited holding in *Douglas* was that if the state seeks to introduce evidence to prove a defendant's guilt or draw for the jury an inference from which to show a defendant's guilt, the rape shield statute may not be used to prohibit the defendant from introducing contrary evidence without violating a defendant's constitutional right to a fair trial"). The limited exception described in *Douglas*, which effectively prevents the State from using the rape shield law as both a sword and a shield, is of no application here.

There was no error, plain or otherwise, in denying Campbell the right to cross-examine Stetzel regarding his prior sexual conduct with the Victim for the purpose of impeachment. The trial court's ruling did not violate Campbell's rights under the Confrontation Clause.

Point Two is denied.

13

**Point Three**

Campbell's third point on appeal argues that the trial court plainly erred by permitting the State to present evidence of a sexual encounter between Campbell and a man the day before Campbell's encounter with Victim because the evidence violated section 491.015, and Campbell's due process right to a fair trial because the evidence was more prejudicial than probative. Though this evidence was the subject of motions in limine filed by Campbell and denied by the trial court, Campbell did not object when the evidence was discussed and presented at trial. Campbell concedes that his claim of error is not preserved for our review and is at best subject to plain error review.

We have already explained that plain error review involves a two-step test. *Ellis*, 538 S.W.3d at 337. Campbell has failed to demonstrate evident, obvious, and clear error.

Campbell argues that the trial court erred by permitting the introduction of evidence that Campbell had been subjected to an unwanted sexual encounter with a man the day before the charged conduct involving Victim. In closing, the State argued the encounter "gave [Campbell] a reason, a motive to assert his heterosexuality so [Campbell] could prove to himself that he [was] not gay." Campbell asserts that it was error to permit the introduction of the evidence because his "case turned almost exclusively on the relative credibility" of Campbell and the Victim and evidence of the encounter "improperly weighted the balance against him." [Appellant's Br., p. 28] Campbell relies on the "rationale" of section 491.015, which he argues should apply "as strongly to [] Campbell, as a defendant, as it does to a complaining witness."

14

Campbell cites no authority for the argument that section 491.015's rationale applies to anyone other than the complaining witness in a criminal proceeding, and provides us with no explanation for the absence of supportive authority. On that basis alone, we are justified in deeming his point on appeal abandoned. *Matter of Williams*, 573 S.W.3d 106, 118-19 (Mo. App. W.D. 2019) ("[A] reviewing court is justified in considering a point abandoned if there is no authority or no explanation as to why authority is not available."). In any event, the plain language of section 491.015 belies Campbell's contention, as the statute only excludes "evidence of specific instances of the ***complaining witness'*** prior sexual conduct." (Emphasis added.) The rationale behind section 491.015 supports construing the statute exactly as it is written.

> The thinking behind the enactment of [section 491.015] undoubtedly was threefold. First, it redressed the faulty premise upon which evidence of prior sexual conduct traditionally had been admitted [under the view that 'a woman of unchaste character was more likely to consent to an act of sexual intercourse than a woman strictly virtuous']. Second, it is apparent that in most instances a rape victim's past conduct has no reasonable bearing upon the issue of consent or credibility. Introduction of such evidence serves only to humiliate and embarrass the witness in a public "fishing expedition" which puts the complainant on trial instead of the appellant. Section 491.015, thus, reflects a major public policy decision that "victims" not be subjected to unwarranted psychological and emotional abuse. Lastly, the statute demonstrates a reasonable and proper attempt to aid effective law enforcement by encouraging victims of rape to report and prosecute such crimes without a threat to expose intimate details of past sexual activity, if any, to the public.

*State v. Brown*, 636 S.W.2d 929, 933 (Mo. banc 1982) (internal citations omitted) *repudiated by State v. Jones*, 716 S.W.2d 799 (Mo. banc 1986) *on other grounds*. This rationale is not served by extending the protective reach of the rape shield statute to criminal defendants. Nor would it be the province of this court to do so. *State v. Samuels*,

15

88 S.W.3d 71, 82 (Mo. App. W.D. 2002) ("It is not the province of this court to carve out more exceptions than the legislature saw fit to include in [a] statute.").

We cannot convict the trial court of evident, obvious, and clear error where there is no authority to support applying section 491.015 to exclude evidence of a specific instance of Campbell's sexual conduct. Because Campbell cannot establish the first prong required for plain error review, we need not address Campbell's argument that the evidence resulted in a manifest injustice.[6]

Point Three is denied.

## Point Four

Campbell's fourth point on appeal asserts that the trial court plainly erred by permitting Lahey to testify that she volunteered to go in to Victim's room to look for Campbell's water bottle because she did not think "it was appropriate for [Campbell] to enter" the victim's room at night. Campbell argues this was improper lay witness opinion testimony that "was not relevant to any issue before the court and not based on any special knowledge [Lahey] possessed." [Appellant's Brief, p. 31]. Campbell concedes that he did not preserve this claim of error for appellate review because he did not include the claim of error in his motion for new trial. As such, the claim is subject to plain error review, at best. Campbell also concedes even if it was error to permit Lahey to opine about the

---

[6]Campbell cites to several cases that purportedly hold that the improper admission of evidence may result in manifest injustice warranting reversal. The basis for reversal in each of those cases depended on improperly admitted evidence. *See State v. Presberry,* 128 S.W.3d 80 (Mo. App. E.D. 2003); *State v. Sykes*, 569 S.W.2d 258 (Mo. App. S.L. 1978); *State v. Gantt*, 644 S.W.2d 656 (Mo App. W.D. 1982); *State v. Matthews*, 552 S.W.3d 674 (Mo. App. W.D. 2018); *State v. Allen*, 274 S.W.3d 514 (Mo. App. W.D. 2008). Here, Campbell has failed to develop a legal basis that would support a conclusion that the introduction of the challenged evidence was improper. Thus, the cases he relies on to demonstrate manifest injustice are unavailing.

16

propriety of his entry into Victim's room, that error would not independently warrant reversal, but would instead "contribute[] to the cumulative harm to [] Campbell of the various errors in this case." [Appellant's Brief, p. 31]

The trial court did not plainly err. "Generally, a lay witness must state facts from which the jury forms an opinion and may not testify regarding his or her opinion on a matter in dispute." *State v. Hutson*, 487 S.W.3d 100, 107 (Mo. App. W.D. 2016). But "[a]n exception to the general rule allows a lay witness to provide an opinion if the witness possesses knowledge that is not available to the jury and that would be helpful to the jury to determine a disputed issue." *Hutson*, 487 S.W.3d at 107. Additionally, "a witness who personally observed events may testify to his matter of fact comprehension of what he has seen in a descriptive manner which is actually a conclusion, opinion or inference, if the inference is common and accords with ordinary experiences of everyday life." *Id.* "Such practice is justified by convenience as a 'short-hand rendition of a composite situation' and by necessity to avoid losing evidence where it would be extremely difficult or impossible for the witness to convey an accurate sense of his or her observations if limited to a statement of facts in the traditional sense." *Id.* (citing *State v. Davidson*, 242 S.W.3d 409, 413 (Mo. App. E.D. 2007)).

Here, Lahey explained why she volunteered to enter Victim's room to retrieve Campbell's water bottle. Lahey's "matter of fact" testimony regarding her motivation for entering Victim's room on Campbell's behalf was arguably not a lay opinion at all, and instead merely an admissible explanation for her decision to enter Victim's room on Campbell's behalf. *See, e.g., State v. Edwards*, 365 S.W.3d 240, 253 (Mo. App. W.D.

17

2012) (holding that a witness's testimony that she "believed" a victim was not an opinion on credibility and was instead an explanation for the witness's decision to terminate an interview with the victim).

Even if Lahey's testimony could be characterized as a plainly erroneous lay opinion (which we do not hold), Campbell concedes admission of the testimony, standing alone, would not support reversal of his conviction. *State v. Capozzoli*, 578 S.W.3d 841, 845 (Mo. App. W.D. 2019) (holding that an abuse of discretion in admitting evidence will not support reversal unless "the error was so prejudicial that it deprived the defendant of a fair trial . . . [because] when considered with and balanced against all of the evidence properly admitted, there is a reasonable probability that the jury would have reached a different conclusion without the error"). As we explain in this Opinion, there are no other errors to cumulate with this claimed error. As such, error, if any, associated with the admission of Lahey's lay opinion would not warrant reversal.

Point four is denied.

### Point Five

Campbell's fifth point on appeal argues that the trial court erred in overruling his objection to a statement made by the State during its rebuttal closing argument. Campbell asserts the State argued that in order to acquit Campbell, the jury would have to believe that Victim "made it all up," and that the argument improperly shifted the burden of proof to Campbell.

"The trial court maintains broad discretion in controlling closing argument." *State v. Deck*, 303 S.W.3d 527, 540 (Mo. banc 2010). "A conviction will be reversed only if it

18

is established that the complained of comments had a decisive effect on the jury's determination." *State v. McClain*, 824 S.W.2d 103, 105 (Mo. App. E.D. 1992). "Closing arguments must be examined in the context of the entire record." *Deck*, 303 S.W.3d at 541.

During closing argument, Campbell's counsel attacked Victim's credibility, suggesting that Victim misrepresented how much alcohol she had consumed. Defense counsel also argued that Victim's account of the evening only "gelled" into a more definite account after discussing the event with her friends the following morning. Defense counsel also suggested that other State witnesses were biased.

During the rebuttal portion of the State's closing argument, the prosecutor noted that some of Campbell's witnesses' accounts corroborated Victim's account of the interaction with Campbell. The prosecutor then compared Campbell's account of the interaction with the evidence offered by the State's witnesses, and noted how the State's witnesses corroborated the Victim's testimony. In this context, the prosecutor argued: "[Victim] will never forget the fact that the Defendant raped her. To find him not guilty, you would really have to believe that [Victim] made all of this up, and there is no credible evidence for that." Campbell objected on the basis that the argument misstated the law and evidence. The trial court overruled the objection, but issued a curative instruction advising the jury to "remember the evidence as they recall it and to follow the instructions that the Court has read to you and that you will be given."

Campbell contends that the State's argument during rebuttal closing was a misstatement of law and had a decisive effect on the jury's determination. Specifically,

Campbell contends that the State's argument shifted the burden of proof to Campbell. We disagree.

"[A] prosecutor is allowed to comment on witnesses' credibility during closing argument." *State v. Chism*, 252 S.W.3d 178, 188 (Mo. App. W.D. 2008). Alongside witness credibility, a prosecutor can also argue, "the evidence, [and] the reasonable inferences from that evidence." *Hays v. State*, 484 S.W.3d 121, 136 (Mo. App. W.D. 2015).

Statements similar to the one made by the State in this case have been frequently reviewed and approved by our courts in other cases. *See State v. McClain*, 824 S.W.2d 103, 106 (Mo. App. E.D. 1992) (prosecutor's argument that for the jury to find defendant not guilty, the jury would have to believe that all of the State's witnesses were lying was not improper because "[a] prosecutor has the right to comment on the evidence and the credibility of witnesses from the State's standpoint during closing argument");[7] *State v. Chism*, 252 S.W.3d 178, 189 (Mo. App. W.D. 2008) (holding that it was not improper for the prosecutor to argue that to find defendant not guilty, the jury would "have to believe that [a State's witness] is a liar," and that other State witnesses lied); *State v. Vanlue*, 216 S.W.3d 729, 733-35 (Mo. App. S.D. 2007) (holding that it was not improper for the prosecutor to argue that to believe defendant's testimony, the jury would have to find that

---

[7]Campbell suggests in his reply brief that the court's holding in *McClain* was predicated on the fact the appellant did not present any evidence or testify in his defense during trial. 824 S.W.2d at 105-06. Campbell's reading of *McClain* is misguided. In a separate point relied, the appellant in *McClain* argued that a prosecutor's comments on the State's uncontroverted evidence constituted an impermissible reference to the appellant's right to testify. *Id.* at 105. The court rejected the argument. *Id.* However, the court in *McClain* never suggested that comments about uncontroverted evidence had any bearing on the holding regarding the propriety of the credibility statements made by the prosecutor during closing. *Id.* at 105-06.

the State's witness was lying); *Glass v. State*, 227 S.W.3d 463, 473 (Mo. banc 2007) (holding that trial counsel was not ineffective for failing to object to a prosecutor's closing argument when the prosecutor argued that in order to find the defendant not guilty the jury "must believe that everyone who came in here lied to you," because the argument did not improperly shift the burden of proof to the defense). In each of these cases, our courts have concluded that the State is entitled to argue relative witness credibility, and that by doing so, the State is not misstating the law or the evidence. The present case cannot be distinguished from this settled authority.

The trial court did not err in overruling Campbell's objection to the State's rebuttal closing argument.

Point Five is denied.

## Point Six

Campbell's sixth point on appeal argues that the trial court erred when it prohibited Campbell's use of a "flip chart" during closing argument to discuss the beyond a reasonable doubt standard. Campbell's flip chart sought to quantify the meaning of the phrase "beyond a reasonable doubt" by characterizing it as a progressive continuum beginning with definitely no; probably no; possibly yes; probably yes; highly likely; or beyond a reasonable doubt. Campbell contends that by denying Campbell's counsel "the right to make proper argument, the trial court infringed" on his Sixth Amendment right to counsel.

We review a trial court's rulings during closing argument for an abuse of discretion. *State v. Tate*, 561 S.W.3d 483, 490 (Mo. App. E.D. 2018). The trial court has a duty to restrict arguments that misstate the law. *Holmsley*, 554 S.W.3d at 410. "Missouri courts

21

have held counsel may refer to the instructions given by the court during closing argument, but counsel may not directly or indirectly, ask the jury to disregard the instructions, give different instructions, or mislead the jury as to the meaning of the instructions." *Id.* "An attorney is free to discuss reasonable doubt during closing arguments, but he cannot attempt to define reasonable doubt." *State v. Muhammad*, 478 S.W.3d 468, 477 (Mo. App. W.D. 2015).

Campbell does not argue that the trial court improperly instructed the jury on the definition of beyond a reasonable doubt. Instead, Campbell argues that his right to counsel was "infringed" because he was restrained from utilizing a flip chart to further discuss the meaning of beyond a reasonable doubt. Campbell cites no authority supporting such a practice, which plainly sought to elaborate on the definition of beyond a reasonable doubt.[8] In fact, all authority on the subject is to the contrary. *See, e.g., State v. Williams*, 659 S.W.2d 778, 781 (Mo. banc 1983) (holding that "[a]n attorney is free to discuss reasonable doubt during closing argument . . . but he cannot attempt to define reasonable doubt") (citations omitted); *Galindo v. State*, 30 S.W.3d 900, 902-04 (Mo. App. S.D. 2000) (admonishing a prosecutor for an improper attempt during voir dire to "quantitate" "reasonable doubt" and "proof beyond any doubt in your mind whatsoever" by "placing

---

[8]Campbell relies on *State v. Barton*, 936 S.W.2d 781 (Mo. banc 1996) for the proposition that his right to counsel was infringed by the restriction imposed on his closing argument. Campbell argues that *Barton* permitted the use of a visual aid to illustrate a timeline. Campbell misrepresents the facts and analysis of *Barton*.

In *Barton*, there is no discussion of a visual aid. Rather, trial counsel attempted to argue evidence in terms of a time line. *Barton*, 936 S.W.2d at 783-94. The prosecution objection on grounds that the argument was not supported by evidentiary inference. *Id.* The trial court sustained the State's objection. *Id.* Our Supreme Court reversed and held that counsel's argument was a permissible argument based on the facts and that the trial court had abused its discretion by excluding the argument. *Id.*

Here, Campbell's use of a flip chart was not based on an evidentiary argument, but was instead an attempt to use a visual aid to explain the definition of "beyond a reasonable doubt." *Barton* is of no relevance.

22

them on some sort of spectrum or continuum," as the effect was "an attempt to flesh out the statutory definition given by the trial court in the State's favor").

Campbell attempts to justify the flip chart he sought to use as "simply the converse" of discussion of the concept of beyond a reasonable doubt that our courts have authorized. In fact, there are cases which have found certain comments about "beyond a reasonable doubt" to constitute appropriate "discussion" of the standard, as distinguished from an improper attempt to define the standard. *See, e.g., State v. Overkamp*, 646 S.W.2d 733, 738 (Mo. banc 1983) (finding no error when prosecutor argued that reasonable is what the jurors determine it to be, and suggesting that the jurors should apply common sense to determine what is reasonable); *State v. Wilbon*, 561 S.W.2d 133, 134 (Mo. App. S.L. 1978) (finding no error when prosecutor stated that not every doubt is a reasonable doubt); *Eaton v. State*, 75 S.W.3d 370, 374 (Mo. App. S.D. 2002) (finding no error when prosecutor told jurors not to "check your common sense" when they entered the deliberation room); *State v. Hammond*, 578 S.W.2d 288, 290 (Mo. App. E.D. 1979) (finding no error when prosecutor stated that reasonable doubt must be based on reason); *State v. Brown*, 822 S.W.2d 529, 531 (Mo. App. E.D. 1991) (finding that discussion of reasonable doubt in context of elements of charged offense was permissible). And there are cases where improper comments about the definition of beyond a reasonable doubt have been determined not to rise to the level of reversible error. *See, e.g., State v. Giannico*, 642 S.W.2d 651, 654 (Mo. banc 1982); *State v. Burnfin*, 606 S.W.2d 629, 631 (Mo. banc 1980); *State v. Geer*, 624 S.W.2d 143, 147 (Mo. App. W.D. 1981). But there are ***no*** cases cited by Campbell or located by this court which have concluded that a trial court abuses its

23

discretion when it prohibits counsel from discussing what is meant by "beyond a reasonable doubt," particularly when the planned discussion so plainly crosses the line into an attempt to define or elaborate on the MAI-CR authorized definition of the standard.

The trial court did not err by prohibiting Campbell from using a flip chart during closing argument that would have elaborated on the definition of beyond a reasonable doubt by placing the standard on a continuum amongst other standards selected by Campbell.[9]

Point Six is denied.

## Conclusion

The trial court's Judgment is affirmed.

_Cynthia L. Martin_
Cynthia L. Martin, Judge


All concur

---

[9]Campbell had used a similar flip chart during closing argument in his first trial, apparently without objection. That, however, has no bearing on whether the trial court properly prohibited use of the flip chart in Campbell's second trial.